DAVID T. PROSSER, J.
¶ 130. (concurring). This is a case of statutory interpretation. The seminal case on *629 statutory interpretation in recent years is State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110.
¶ 131. In Kalal, the court emphasized the importance of statutory text when it embraced the principle that a court's role is to determine what a statute means rather than determine what the legislature intended. Id., ¶ 44. The court said:
It is ... a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature, and to do so requires a determination of statutory meaning. Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute. We assume that the legislature's intent is expressed in the statutory language. Extrinsic evidence of legislative intent may become relevant to statutory interpretation in some circumstances, but is not the primary focus of inquiry. It is the enacted law, not the unenacted intent, that is binding on the public. Therefore, the purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.

Id.

¶ 132. The court explained that statutory interpretation begins with the language of the statute. Id., ¶ 45. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. (citations omitted). Then the court added:
Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as *630 part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.
Id., ¶ 46 (emphasis added) (citations omitted).
¶ 133. In my view, this case requires the court to confront head-on statutory language that, if applied literally, would produce an absurd or unreasonable result.
¶ 134. Historically, courts have tried to avoid absurd or unreasonable results. The year before Kalal, this court said in State v. Hamilton, 2003 WI 50, ¶ 38, 261 Wis. 2d 458, 661 N.W.2d 832: "The court should not search for ambiguity. It should enforce a clear statute." However, "One of the few exceptions to this sound principle is that the court will seek to avoid a truly absurd or unreasonable result." Id., ¶ 39 (citing State v. Burkman, 96 Wis. 2d 630, 642, 292 N.W.2d 641 (1980); State v. Mendoza, 96 Wis. 2d 106, 115, 291 N.W.2d 478 (1980); Kayden Indus., Inc. v. Murphy, 34 Wis. 2d 718, 732, 150 N.W.2d 447 (1967)).
¶ 135. There are innumerable cases in which Wisconsin courts have repeated or actually invoked this exception.
¶ 136. In Worachek v. Stephenson Town School District, 270 Wis. 116, 124, 70 N.W.2d 657 (1955), the court stated: "This court has repeatedly held that a statute should not be construed so as to work an absurd result even when the language seems clear and unambiguous." Id. (citing Connell v. Luck, 264 Wis. 282, 58 N.W.2d 633 (1953); Laridaen v. Ry. Express Agency, Inc., 259 Wis. 178, 47 N.W.2d 727 (1951); Pfingsten v. Pfingsten, 164 Wis. 308, 159 N.W. 921 (1916)).
*631 ¶ 137. In Isaksen v. Chesapeake Instrument Corp., 19 Wis. 2d 282, 289-90, 120 N.W.2d 151 (1963), the court stated:
We are unable to conceive of any reason of policy which might lead the legislature to deny to shareholders so situated the remedy it had provided for others, and Chesapeake has not suggested any.
"It is always presumed, in regard to a statute, that no absurd or unreasonable result was intended by the legislature. Hence if, viewing a statute from the standpoint of the literal sense of its language, it is unreasonable or absurd, an obscurity of meaning exists, calling for judicial construction."
Id. (some citations omitted) (quoting Rice v. Ashland Cnty., 108 Wis. 189, 192, 84 N.W. 189 (1900)).
¶ 138. In Kayden Industries, Inc. v. Murphy, 34 Wis. 2d 718, 732, 150 N.W.2d 447 (1967), the court stated:
Where there is no ambiguity in the literal terms of the provision under consideration there is no room for judicial construction.. . . The only general exception to the above rule[] ... is that the court may construe a provision whose meaning is clear if a literal application of the provision would lead to an absurd or unreasonable result.
Id. (citations omitted).
¶ 139. In Alberte v. Anew Health Care Services, Inc., 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515, the court stated:
While it is true that statutory interpretation begins with the language of the statute, it is also well estab *632 lished that courts must not look at a single, isolated sentence or portion of a sentence, but at the role of the relevant language in the entire statute. Moreover, courts have " 'some "scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning... would thwart the obvious purpose of the statute."'" When a literal interpretation produces absurd or unreasonable results, or results that are clearly at odds with the legislature's intent, "[o]ur task is to give some alternative meaning" to the words.
Id. (brackets in original) (citations omitted).
¶ 140. In Teschendorf v. State Farm Insurance Companies, 2006 WI 89, ¶ 15, 293 Wis. 2d 123, 717 N.W.2d 258, the court stated:
[I]f the meaning of the statute appears to be plain but that meaning produces absurd results, we may also consult legislative history. The purpose in this situation is to verify that the legislature did not intend these unreasonable or unthinkable results. Because our purpose in these situations is grounded in open disbelief of what a statute appears to require, we are bound to limit our off-statute investigations to obvious aberrations.
Id. (internal citations and explanatory parentheticals omitted). The court went on, "The reason to doubt a literal meaning of [the statute] is that it clashes with related statutes." Id., ¶ 24.
¶ 141. In Gasper v. Parbs, 2001 WI App 259, ¶ 8, 249 Wis. 2d 106, 637 N.W.2d 399, the court of appeals stated:
[T]he plain language of a statute should not be construed in a manner that leads to absurd or unreasonable results. State v. Yellow Freight Sys., Inc., 101 Wis. 2d 142, 153, 303 N.W.2d 834 (1981). We presume that "the legislature intends for a statute to be inter *633 preted in a manner that advances the purposes of the statute." Verdoljak v. Mosinee Paper Corp., 200 Wis. 2d 624, 635, 547 N.W.2d 602 (1996).

Id.

¶ 142. These principles were undoubtedly applied in Steinbarth v. Johannes, 144 Wis. 2d 159, 423 N.W.2d 540 (1988), where the court said: "A court will not ordinarily engage in statutory interpretation unless a statute is ambiguous. A statute may be ambiguous and require judicial construction if the literal application of the language would lead to an absurd result." Id. at 165 (citing DeMars v. LaPour, 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985)). Steinbarth, of course, interpreted the same statute now before the court.
¶ 143. Courts try to avoid absurd results, but courts are not eager to disregard the seemingly clear language of a statute. This reluctance is salutary because it reflects the deference and respect of the judiciary for the policy choices of other branches of government.
¶ 144. For judges, there is plenty of solid ground between judicial activism and judicial paralysis. Our precedent provides guidance on when judges should act and when they should not.
¶ 145. Absurd results are much more than undesirable results. Absurd results are aberrations that clash with the manifest purpose of a statute or related statutes (evidenced by statutory language) and cannot be explained as a rational exception to the statutory scheme. Absurd results are usually unexpected. They are different from harsh consequences because they are seldom the fault of an adversely affected party. Instead, they almost always result from circumstances beyond *634 the party's control. Absurd results produce hardship or unfairness that is quickly recognized and cannot be ignored.
¶ 146. This case satisfies these standards, as is documented in the majority opinion. We ought to act but also implore the legislature to rewrite the statute.
¶ 147. For the foregoing reasons, I respectfully concur.